WALTER J. LEWIS, JR. *v.* CHELSEA G.C.A. REALTY PARTNERSHIP, L.P.
(AC 23924)

Dranginis, West and DiPentima, Js.

Argued September 14—officially released December 28, 2004

*Norman J. Voog,* with whom, on the brief, were *Christopher J. Molyneaux* and *Paul R. Kraus,* for the appellant (plaintiff).

*James V. Somers,* with whom were *Patrick M. Birney* and, on the brief, *Joseph G. Fortner, Jr.,* and *Regen O'Malley,* for the appellee (defendant).

*Opinion*

DiPENTIMA, J. The plaintiff, Walter J. Lewis, Jr., appeals from the judgment of the trial court rendered after it granted the motion for summary judgment filed

by the defendant, Chelsea G.C.A. Realty Partnership, L.P. The plaintiff claims that the court (1) incorrectly determined that it lacked subject matter jurisdiction over counts two and three of his complaint, and (2) improperly applied the *Noerr-Pennington*[1] doctrine to count one of his complaint. We reverse the judgment of the trial court rendered following the granting of the motion for summary judgment and remand the case with direction to dismiss the action.

This case is one of a series arising out of the defendant's development of an outlet mall, Clinton Crossing Factory Stores (Clinton Crossing), in Clinton. The parties first came into conflict in August, 1994, when the plaintiff, a real estate developer and resident of Clinton, joined the Clinton Organization for Responsible Development (citizen group), a citizen group concerned by the defendant's development plans. Although not himself a party, the plaintiff provided funding for the citizen group to appeal, in March, 1995, after the Clinton planning and zoning commission's approval to build Clinton Crossing and, in May, 1995, after the commission's grant of a variance to erect a sign and to permit parking in the surrounding residential areas (zoning appeals). The plaintiff also recommended to the citizen group an attor-

---

[1] The *Noerr-Pennington* doctrine, which originates from a "trio of federal antitrust cases, *California Motor Transport Co.* v. *Trucking Unlimited*, 404 U.S. 508, 92 S. Ct. 609, 30 L. Ed. 2d 642 (1972), *United Mine Workers* v. *Pennington*, 381 U.S. 657, 85 S. Ct. 1585, 14 L. Ed. 2d 626 (1965), *Eastern Railroad Presidents Conference* v. *Noerr Motor Freight, Inc.*, 365 U.S. 127, 81 S. Ct. 523, 5 L. Ed. 2d 464 (1961), and their progeny . . . shields from the Sherman [Antitrust] Act [15 U.S.C. § 1 et seq.] a concerted effort to influence public officials regardless of intent or purpose." (Internal quotation marks omitted.) *Zeller* v. *Consolini*, 59 Conn. App. 545, 550, 758 A.2d 376 (2000). "The *Noerr-Pennington* doctrine has evolved from its antitrust origins to apply to a myriad of situations in which it shields individuals from liability for petitioning a governmental entity for redress." Id., 551. The doctrine is applicable to "claims which [seek] to assign liability on the basis of the defendant's exercise of its first amendment rights." (Internal quotation marks omitted.) Id.

ney, Paul R. Kraus, who had worked for him in the past, to handle the appeals. The Superior Court dismissed both zoning appeals, finding that the plaintiffs named in the appeals lacked standing because none of them owned land that abutted or was within 100 feet of the development. This court granted certification to appeal in both cases. The appeals were subsequently withdrawn.

Concerned by the plaintiff's interference with the development of Clinton Crossing, the defendant sought legal advice in October, 1995, to determine whether the plaintiff's actions violated federal or state law. Once counsel discovered that the plaintiff had filed a bankruptcy petition in the United States Bankruptcy Court for the District of Connecticut in September, 1995, counsel recommended that the defendant file a claim therein, alleging violations of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq. In January, 1996, the defendant filed an adversary proceeding under § 523 (a) (6) of the Bankruptcy Code, objecting to the bankruptcy discharge of the debt allegedly owed by the plaintiff to the defendant as a result of the plaintiff's CUTPA violations (adversary proceeding).

While the adversary proceeding was pending, the plaintiff filed this action in July, 1996. The plaintiff alleged violations of CUTPA in that the defendant's adversary proceeding in the Bankruptcy Court and other activities deprived him of his counsel, Kraus, impaired his ability to work as a developer in Clinton, and prevented him from exercising his rights as a resident of Clinton to ensure that the zoning regulations and wetlands laws were followed (count one). During the pendency of this case, the defendant withdrew its adversary proceeding with prejudice.[2] The plaintiff

[2] The defendant asserts that the withdrawal was based on a review of the costs, and the facts that Clinton Crossing was fully operational and that potential recovery was limited.

amended his complaint in November, 1998, adding a second count alleging a vexatious litigation claim under General Statutes § 52-568 and a third count alleging a violation of CUTPA, both based on the adversary proceeding.

At the close of pleadings, the defendant filed a motion for summary judgment on the grounds that the activities alleged in all three counts of the complaint were protected by the *Noerr-Pennington* doctrine, that the defendant had established an advice of counsel defense to counts two and three, and that counts two and three were preempted by bankruptcy law. The court granted the defendant's motion, concluding that the *Noerr-Pennington* doctrine barred count one and that bankruptcy law preempted counts two and three. This appeal followed.

On appeal, the plaintiff claims that the court improperly granted the defendant's motion for summary judgment as to counts two and three on federal preemption grounds because the relevant provisions of the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure are directed at disciplining attorneys who bring frivolous actions, but not at compensating the victims of such actions. The plaintiff also claims that the court improperly applied the *Noerr-Pennington* doctrine in rendering summary judgment as to count one because the activities of the plaintiff, himself, related to the zoning appeals were protected by the doctrine. As alternative grounds for affirmance, the defendant argues that the *Noerr-Pennington* doctrine bars all three claims, and that counts two and three are barred because it filed the adversary proceeding in reliance on counsel.

As a preliminary matter, we set forth the standard of review. "Our review of a trial court's decision to grant [a] motion for summary judgment is plenary. . . .

Summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party." (Citation omitted; internal quotation marks omitted.) *Ryan Transportation, Inc.* v. *M & G Associates*, 266 Conn. 520, 525, 832 A.2d 1180 (2003).

I

The plaintiff first claims that the court improperly determined that counts two and three of his complaint, which alleged vexatious litigation and violation of CUTPA, were preempted by bankruptcy law. Federal preemption implicates the court's jurisdiction. See *Cox Cable Advisory Council* v. *Dept. of Public Utility Control*, 259 Conn. 56, 62, 788 A.2d 29, cert. denied, 537 U.S. 819, 123 S. Ct. 95, 154 L. Ed. 2d 25 (2002). "The question of preemption is one of federal law, arising under the supremacy clause of the United States constitution. . . . Determining whether Congress has exercised its power to preempt state law is a question of legislative intent. . . . [A]bsent an explicit statement that Congress intends to preempt state law, courts should infer such intent where Congress has legislated comprehensively to occupy an entire field of regulation, leaving no room for the States to supplement federal law . . . or where the state law at issue conflicts with federal law, either because it is impossible to comply with both . . . or because the state law stands as an obstacle to the accomplishment and execution of congressional objectives . . . ." (Internal quotation marks omitted.) *Barbieri* v. *United Technologies Corp.*, 255 Conn. 708, 717, 771 A.2d 915 (2001).

The United States constitution grants to Congress the power to establish "uniform Laws on the subject

of Bankruptcies throughout the United States . . . ." U.S. Const., art. I, § 8. Congress has given the United States district courts original and exclusive jurisdiction over bankruptcy matters arising under title 11 of the United States Code. 28 U.S.C. § 1334 (a). Through the United States Bankruptcy Code, 11 U.S.C. § 101 et. seq., Congress has provided "a comprehensive federal system of penalties and protection to govern the orderly conduct of debtors' affairs and creditors' rights." *Eastern Equipment & Services Corp.* v. *Factory Point National Bank*, 236 F.3d 117, 120 (2d Cir. 2001). The code "contains remedies for the misuse of the [bankruptcy] process more generally . . . ." (Internal quotation marks omitted.) *Astor Holdings, Inc.* v. *Roski*, 325 F. Sup. 2d 251, 262 (S.D.N.Y. 2003); see 11 U.S.C. § 303 (i) (2) (creditors who file involuntary bankruptcy petition in bad faith are liable for damages); 11 U.S.C. § 362 (h) (persons who wilfully violate bankruptcy stay are liable for damages).

Significantly for the plaintiff's claim before this court, the Federal Rules of Bankruptcy Procedure, promulgated under 28 U.S.C. § 2075, provide a remedy for the bad faith filing of an adversary proceeding. Rule 9011 provides that every filing with the Bankruptcy Court shall be signed by either an attorney or unrepresented party, and that such signature certifies that the filing is made in good faith and not for the purpose of needlessly increasing the cost of litigation.[3] Sanctions for viola-

---

[3] At the time the bankruptcy petition and the adversary proceeding were filed, rule 9011 (a) provided: *"Signature.* Every petition, pleading, motion and other paper served or filed in a case under the Code on behalf of a party represented by an attorney, except a list, schedule, or statement, or amendments thereto, shall be signed by at least one attorney of record in the attorney's individual name, whose office address and telephone number shall be stated. A party who is not represented by an attorney shall sign all papers and state the party's address and telephone number. The signature of an attorney or a party constitutes a certificate that the attorney or a party has read the document; that to the best of the attorney's or party's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the

tions of the rule "shall [be] impose[d] on the person who signed [the submission], the represented party, or both [and] may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the document, including a reasonable attorney's fee." Fed. R. Bankr. P. 9011 (a) (1994). The plaintiff argues that the purpose of rule 9011 is to punish attorneys who bring frivolous lawsuits, not to compensate victims injured by such bad behavior. It may be true that the rule is punitive in nature, but the language of the rule as it existed at the time of the adversary proceeding makes it clear that the plaintiff could have sought in Bankruptcy Court, based on the defendant's alleged bad faith filing of the adversary proceeding, to impose sanctions on the defendant directing payment of expenses and attorney's fees. In addition, the plaintiff could have sought damages under 28 U.S.C. § 1927, which provides that any attorney who "so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." The plaintiff, thus, was not without a remedy in Bankruptcy Court.

Although it is true that the federal remedies provided for in the bankruptcy context do not offer the substantial damages available under Connecticut's vexatious

extension, modification, or reversal of existing law; and that it is not interposed for any improper purpose, such as to harass or cause unnecessary delay or needless increase in the cost of litigation or administration of the case. If a document is not signed, it shall be stricken unless it is signed promptly after the omission is called to the attention of the person whose signature is required. If a document is signed in violation of this rule, the court on motion or on its own initiative, shall impose on the person who signed it, the represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the document, including a reasonable attorney's fee." (Emphasis in original.) Fed. R. Bankr. P. 9011 (a) (1994). The rule was amended significantly on December 1, 1997.

litigation statute and CUTPA, that is an insufficient basis on which to preclude preemption. The threat of such tort actions and the potential for a large recovery may itself deter individuals from exercising their rights in bankruptcy, thereby frustrating the purpose of the bankruptcy process. See *MSR Exploration, Ltd.* v. *Meridian Oil, Inc.*, 74 F.3d 910, 916 (9th Cir. 1996). It is, thus, "for Congress and the federal courts, not the state courts, to decide what . . . penalties are appropriate for use in connection with the bankruptcy process and when those . . . penalties shall be utilized." Id.

We note that a majority of courts that have considered the preemptive nature of bankruptcy law in the context of state tort claims alleging violations of the bankruptcy process have found such claims to be preempted. See, e.g., *Eastern Equipment & Services Corp.* v. *Factory Point National Bank*, supra, 236 F.3d 121 (District Court lacked jurisdiction to hear state law tort claims alleging violations of automatic stay); *MSR Exploration, Ltd.* v. *Meridian Oil, Inc.*, supra, 74 F.3d 916 (malicious prosecution action in District Court for bad faith filing of creditor's claim in bankruptcy proceeding preempted by Bankruptcy Code); *Astor Holdings, Inc.* v. *Roski*, supra, 325 F. Sup. 2d 263 (claims sounding in state law that defendant filed bankruptcy petition, certain papers with Bankruptcy Court in bad faith cannot be brought in federal District Court due to preemption by Bankruptcy Code); *Idell* v. *Goodman*, 224 Cal. App. 3d 262, 270–71, 273 Cal. Rptr. 605 (1990) (claim brought in state court alleging malicious prosecution for bad faith filing of adversary proceeding in Bankruptcy Court preempted by rule 9011 of Federal Rules of Bankruptcy Procedure, 28 U.S.C. § 1927).[4]

---

[4] Cf. *Couloute* v. *Hunt, Leibert, Chester & Jacobson, LLC*, 295 B.R. 689, 692 n.1 (Bankr. D. Conn. 2003) (remarking that plaintiff's CUTPA, slander claims arising out of violation of bankruptcy stay were properly heard in Bankruptcy Court); see also *Gonzales* v. *Parks*, 830 F.2d 1033 (9th Cir. 1987); *Glannon* v. *Garrett & Associates, Inc.*, 261 B.R. 259 (Bankr. D. Kan. 2001);

The exclusivity of federal jurisdiction over bankruptcy proceedings, the complexity and comprehensiveness of Congress' regulation in the area of bankruptcy law and the existence of federal sanctions for the filing of frivolous and malicious pleadings in bankruptcy must be read as Congress' implicit rejection of alternative remedies such as those the plaintiff seeks. Accordingly, we determine that the court lacked subject matter jurisdiction over counts two and three of the complaint.

## II

The plaintiff also claims that the court improperly determined that count one of his complaint was barred under the *Noerr-Pennington* doctrine. We do not reach the issue of *Noerr-Pennington* because we determine that count one is preempted by bankruptcy law as well.

The issue of whether bankruptcy law preempted the court's jurisdiction over count one was not raised before either the trial court or this court on appeal. Count one, like counts two and three, appears to be premised entirely on the adversary proceeding brought by the defendant in the Bankruptcy Court. In light of the apparent similarity between the three counts, we raised the issue sua sponte. "[T]he question of subject matter jurisdiction, because it addresses the basic competency of the court, can be raised by any of the parties, or by the court sua sponte, at any time." (Internal quota-

*Koffman* v. *Osteoimplant Technology, Inc.*, 182 B.R. 115 (Bankr. D. Md. 1995); *Choy* v. *Redland Ins. Co.*, 103 Cal. App. 4th 789, 127 Cal. Rptr. 2d 94 (2002), review denied, 2003 Cal. LEXIS 886 (February 11, 2003); *Smith* v. *Mitchell Construction Co.*, 225 Ga. App. 383, 481 S.E.2d 558, cert. denied, 1997 Ga. LEXIS 858 (October 3, 1997); *Edmonds* v. *Lawrence National Bank & Trust Co.*, 16 Kan. App. 2d 331, 823 P.2d 219 (1991); *Mason* v. *Smith*, 140 N.H. 696, 672 A.2d 705 (1996); but see *Paradise Hotel Corp.* v. *Bank of Nova Scotia*, 842 F.2d 47 (3d Cir. 1988); *In re Emerald City Records, Inc.* v. *First Media Corp.*, 9 B.R. 319 (Bankr. N.D. Ga. 1981); *R.L. LaRoche, Inc.* v. *Barnett Bank of South Florida, N.A.*, 661 So. 2d 855 (Fla. App. 1995).

tion marks omitted.) *Beneduci* v. *Valadares*, 73 Conn. App. 795, 805, 812 A.2d 41 (2002). Federal preemption implicates the court's subject matter jurisdiction. See *Cox Cable Advisory Council* v. *Dept. of Public Utility Control*, supra, 259 Conn. 62. Following oral argument, we directed the parties to file supplemental briefs simultaneously, addressing whether count one of the amended complaint was barred by federal preemption.

In count one, the plaintiff first alleged that the defendant brought the adversary proceeding in order to harass the plaintiff and his attorney, Kraus, and that, as a result, the plaintiff incurred expenses and attorney's fees. The complaint also alleged in relevant part that "[a]s a result of the Defendant's activities, statements, conversations with town officials, commentaries, correspondence, and other activities, the Plaintiff's ability to function in the Town of Clinton as a builder and developer has been severely impaired and damaged . . . [and he] has incurred and will continue to incur loss of business, reputation, and good will . . . ." Other than making those general allegations in the complaint, however, the plaintiff did not allege facts as to the defendant's "activities" or otherwise treat count one as founded on anything other than the adversary proceeding. The court's understanding, as made evident in its memorandum of decision, was that count one was in fact premised only on the adversary proceeding.[5] In his supplemental brief, the plaintiff failed to provide this court with any reason why count one raised a claim in any way distinct from counts two and three. Count one, in all relevant respects, is, thus, identical to those claims brought in counts two and three, which the court determined were precluded by federal law. We hold, therefore, that count one of the plaintiff's complaint alleging

---

[5] In its memorandum of decision, the court stated: "[C]ount one alleges that [the defendant's] conduct relating to the filing of the adversary proceeding violated CUTPA . . . ."

CUTPA violations is preempted by bankruptcy law for the same reasons we discussed in part I. Accordingly, we determine that the court lacked subject matter jurisdiction over count one.

The form of the judgment is improper, the judgment for the defendant is reversed and the case is remanded with direction to render judgment dismissing the action.

In this opinion the other judges concurred.