**CASES ARGUED AND DETERMINED**

IN THE

# SUPREME COURT

OF THE

# STATE OF CONNECTICUT

————————

## JONATHAN S. METCALF *v.* MICHAEL FITZGERALD ET AL.
(SC 20227)

Robinson, C. J., and Palmer, McDonald,
D'Auria, Kahn and Ecker, Js.*

*Syllabus*

The plaintiff brought an action in Superior Court, seeking to recover damages from the defendants under state law. The plaintiff, who had previously filed a bankruptcy petition in the United States Bankruptcy Court, asserted claims of vexatious litigation and violation of the Connecticut Unfair Trade Practices Act (CUTPA) (§ 42-110a et seq.) in connection with the defendants' actions during the bankruptcy proceeding. The plaintiff claimed, inter alia, that, after he filed his bankruptcy petition, one of the defendants initiated an adversary proceeding in the Bankruptcy Court on the basis of certain alleged improprieties that the plaintiff had committed in connection with the bankruptcy proceeding. After the plaintiff presented evidence to contradict the allegations against him, the Bankruptcy Court dismissed the adversary proceeding. In the present action, the trial court dismissed the plaintiff's state law vexatious litigation and CUTPA claims, concluding that it lacked subject matter jurisdiction over those claims because they were preempted by federal bankruptcy law. The trial court rendered judgment dismissing the plaintiff's action, from which the plaintiff appealed. *Held* that the trial court properly dismissed the plaintiff's state law vexatious litigation and

* This case originally was scheduled to be argued before a panel of this court consisting of Chief Justice Robinson and Justices Palmer, McDonald, D'Auria, Kahn and Ecker. Although Justice McDonald was not present when the case was argued before the court, he has read the briefs and appendices and listened to a recording of oral argument prior to participating in this decision.

Metcalf *v.* Fitzgerald

CUTPA claims for lack of subject matter jurisdiction, those claims having been preempted by federal Bankruptcy Code provisions relating to sanctions for abuse of process: although there was no provision in the Bankruptcy Code that explicitly precluded the plaintiff's vexatious litigation and CUTPA claims and, thus, those claims were not expressly preempted by the Bankruptcy Code, the plaintiff's claims were implicitly preempted, as Congress enacted a comprehensive bankruptcy scheme, inclusive of provisions for sanctions and remedies for abuse of the bankruptcy process, so as to occupy the entire field of penalties and sanctions, leaving no room for state law to supplement federal bankruptcy law, and the federal interest in uniformity was so dominant that federal law was assumed to preclude enforcement of state laws that threaten the uniformity and finality of the bankruptcy process for both debtors and creditors; moreover, the plaintiff could not prevail on his claim that, because a successful cause of action for vexatious litigation or unfair trade practices under state law affords relief that potentially is more extensive than that contemplated under the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure, such a cause of action falls outside of the field that Congress intended to occupy, as the difference in remedies did not warrant an inference that Congress intended to permit independent abuse of process actions outside the bankruptcy process; furthermore, although compliance with both the Bankruptcy Code and state law would not be impossible, permitting parties to bring abuse of process actions in state court would hinder Congress' objective of uniformly defining the scope and availability of remedies for abuse of the bankruptcy process.

Argued March 29—officially released September 3, 2019

*Procedural History*

Action to recover damages for, inter alia, vexatious litigation, and for other relief, brought to the Superior Court in the judicial district of Waterbury, where the court, *Roraback, J.*, granted the motion to dismiss filed by the defendant Myles H. Alderman, Jr., et al. and rendered judgment for the defendants, from which the plaintiff appealed. *Affirmed.*

*Bruce L. Elstein*, with whom was *John J. Ribas*, for the appellant (plaintiff).

*Joshua A. Yahwak*, for the appellees (named defendant et al.).

*Cristin E. Sheehan*, with whom were *Timothy J. Holzman* and, on the brief, *Robert W. Cassot*, for the appellees (defendant Alderman & Alderman, LLC, et al.).

Metcalf *v.* Fitzgerald

*Opinion*

D'AURIA, J. In this appeal, we are asked to determine whether the United States Bankruptcy Code provisions permitting bankruptcy courts to assess penalties and sanctions preempt state law claims for vexatious litigation and violation of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq. The plaintiff, Jonathan S. Metcalf, brought state law claims against the defendants, Michael Fitzgerald, Ion Bank (bank), Myles H. Alderman, Jr., and Alderman & Alderman, LLC (law firm), for alleged vexatious litigation and for unfair and deceptive business acts or practices during the plaintiff's underlying bankruptcy proceeding. The plaintiff appeals from the trial court's granting of the motion to dismiss filed by Alderman and the law firm, for lack of subject matter jurisdiction on the ground that federal bankruptcy law preempts the claims. The trial court determined that the outcome of the motion was controlled by the Appellate Court's decision in *Lewis* v. *Chelsea G.C.A. Realty Partnership, L.P.*, 86 Conn. App. 596, 862 A.2d 368 (2004), cert. denied, 273 Conn. 909, 870 A.2d 1079 (2005). The court in *Lewis* held that the Bankruptcy Code preempted CUTPA and vexatious litigation claims for alleged abuse of the bankruptcy process. Id., 605–607. The plaintiff contends that the court in *Lewis* did not properly evaluate each of the three types of preemption by which Congress manifests its intent to preempt state law and failed to consider the relevant Bankruptcy Code provisions. See 11 U.S.C. § 105 (2012); Fed. R. Bankr. P. 9011. We disagree and affirm the judgment of the trial court.

The following facts, as set forth in the plaintiff's complaint, and procedural history are relevant to our review of the plaintiff's claim. The plaintiff's business, Metcalf Paving Company, filed a chapter 11 bankruptcy petition in 2009. See 11 U.S.C. § 1101 et seq. (2012). The Metcalf Paving Company bankruptcy thereafter was converted

Metcalf *v.* Fitzgerald

to a case under chapter 7 of the Bankruptcy Code. See 11 U.S.C. § 701 (2012). The plaintiff then filed individually for bankruptcy under chapter 7. The bank, one of the plaintiff's creditors in the bankruptcy proceeding, subsequently commenced an adversary proceeding against the plaintiff under §§ 523 (a) and 727 (a) (7) of the Bankruptcy Code. Under these provisions, the bank objected to the discharge of the plaintiff's debt, asserting, among other allegations, that the plaintiff had failed to deliver a check, failed to provide documents, failed to disclose a website that he allegedly used for a new business, took possession of expensive machinery, unlawfully transferred property, destroyed property of the estate, defrauded creditors, and fraudulently withheld information from the chapter 7 trustee. In response, the plaintiff presented evidence to the Bankruptcy Court to contradict the allegations and moved for summary judgment. Upon reviewing the plaintiff's evidence, the bank moved to dismiss the adversary proceeding. The Bankruptcy Court granted the motion to dismiss.

The plaintiff subsequently commenced this action in the Superior Court. In his complaint, the plaintiff set forth claims for vexatious litigation against all the defendants, and CUTPA claims against Fitzgerald and the bank. In support of the vexatious litigation claims, the plaintiff alleged that the defendants had initiated the adversary proceeding without probable cause and with malice, maintained the proceeding without probable cause and with malice, and, as a result, caused him to suffer damages. The plaintiff claimed that the defendants knew or should have known that the allegations they made during the adversary proceeding were without factual merit and were barred by the applicable statute of limitations. In support of the CUTPA claims, the plaintiff alleged that Fitzgerald and the bank repeatedly engaged in unfair and deceptive acts or practices

Metcalf *v.* Fitzgerald

during the bankruptcy proceeding, and that their conduct had been so frequent as to constitute a general business practice. The plaintiff claimed damages that included attorney's fees, losses from an inability to-manage his business affairs, emotional distress, expenditures of time, effort and resources, and injuries to his business and professional reputation. The plaintiff alleged that he was entitled to damages and costs under the common law, double damages and treble damages under Connecticut's vexatious litigation statute, General Statutes § 52-568, and punitive damages and attorney's fees under CUTPA. See General Statutes § 42-110g.

Alderman and the law firm moved to dismiss the vexatious litigation claims on the ground that the claims arose from conduct that allegedly had taken place within a bankruptcy proceeding and were, therefore, preempted by the Bankruptcy Code. The trial court agreed, granted the motion to dismiss the vexatious litigation claims and, on its own motion and for the same reason, dismissed the remaining counts of the complaint, including the CUTPA claims, for lack of subject matter jurisdiction. The trial court cited *Lewis* v. *Chelsea G.C.A. Realty Partnership, L.P.*, supra, 86 Conn. App. 596, in support of its decision.

In *Lewis*, the Appellate Court held that bankruptcy law preempted state law CUTPA and vexatious litigation claims. Id., 605–607. The Appellate Court reasoned that "[t]he exclusivity of federal jurisdiction over bankruptcy proceedings, the complexity and comprehensiveness of Congress' regulation in the area of bankruptcy law and the existence of federal sanctions for the filing of frivolous and malicious pleadings in bankruptcy must be read as Congress' implicit rejection of alternative remedies such as those the plaintiff seeks." Id., 605. Accordingly, the court in *Lewis* remanded the

Metcalf *v.* Fitzgerald

case to the trial court with direction to dismiss the action. Id., 607.

Upon the trial court's dismissal of the present action, the plaintiff timely appealed to the Appellate Court. The appeal was then transferred from the Appellate Court to this court. See General Statutes § 51-199 (c); Practice Book § 65-1.

On appeal, the plaintiff's sole claim is that the trial court incorrectly concluded that federal bankruptcy law preempted his state law claims for vexatious litigation and violations of CUTPA.[1] Specifically, the plaintiff argues that this court should not follow the holding in *Lewis* because that court failed to conduct a proper preemption analysis. Additionally, the plaintiff argues that his state law claims are neither expressly nor implicitly preempted and do not conflict with Congress' objectives in the Bankruptcy Code. We disagree.

We begin with our well established standard of review for reviewing a trial court's decision on a motion to dismiss: "A motion to dismiss tests, inter alia, whether, on the face of the record, the court is without jurisdiction. . . . [O]ur review of the court's ultimate legal conclusion and resulting [determination] of the motion to

---

[1] Count seven of the plaintiff's complaint alleged that Fitzgerald and the bank violated CUTPA. Fitzgerald and the bank moved to dismiss counts eight through thirteen of the complaint, which alleged vexatious litigation. On its own motion, the trial court dismissed the CUTPA claim on the same ground as it dismissed the vexatious litigations claims—lack of subject matter jurisdiction.

In his brief to this court, the plaintiff did not specifically identify or analyze the CUTPA claim but, rather, referred to it only generally by stating that the "vexatious litigation claims *and the like* were not intended to be preempted by the Bankruptcy Code and its rules" and that, "[a]ccordingly, it should be held that *no claim brought here* was preempted or intended to be preempted by the federal rules applicable." (Emphasis added.) Although the plaintiff's brief is imprecise, because the defendants have not argued that the plaintiff has waived the CUTPA claims, we consider the plaintiff's argument as applying to both the vexatious litigation claims and the CUTPA claims.

Metcalf *v.* Fitzgerald

dismiss will be de novo. . . . When a . . . court decides a jurisdictional question raised by a pretrial motion to dismiss, it must consider the allegations of the complaint in their most favorable light. . . . In this regard, a court must take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader. . . . The motion to dismiss . . . admits all facts which are well pleaded, invokes the existing record and must be decided upon that alone. . . . In undertaking this review, we are mindful of the well established notion that, in determining whether a court has subject matter jurisdiction, every presumption favoring jurisdiction should be indulged.'' (Internal quotation marks omitted.) *Dorry* v. *Garden*, 313 Conn. 516, 521, 98 A.3d 55 (2014).

Turning to the legal principles at issue, we note that the supremacy clause of the United States constitution; see U.S. Const., art. VI, cl. 2; provides that federal law ''shall be the supreme Law of the Land; and the Judges in every [S]tate shall be bound thereby, any Thing in the Constitution or Laws of any [S]tate to the Contrary notwithstanding. . . . Under this principle, Congress has the power to pre-empt state law.'' (Citation omitted; internal quotation marks omitted.) *Arizona* v. *United States*, 567 U.S. 387, 399, 132 S. Ct. 2492, 183 L. Ed. 2d 351 (2012).

The bankruptcy clause of the United States constitution grants Congress the power ''[t]o establish . . . uniform Laws on the subject of Bankruptcies throughout the United States . . . .'' U.S. Const., art. I, § 8, cl. 4. District courts of the United States have ''original and exclusive jurisdiction of all cases under title 11.'' 28 U.S.C. § 1334 (a) (2012). Through title 11 of the United States Code, Congress provided ''a comprehensive federal system of penalties and protections to govern the orderly conduct of debtors' affairs and creditors' rights.'' *Eastern Equipment & Services Corp.* v. *Factory Point*

8 SEPTEMBER, 2019 333 Conn. 1

Metcalf *v.* Fitzgerald

*National Bank*, 236 F.3d 117, 120 (2d Cir. 2001); see 11 U.S.C. § 101 et seq. (2012). As for sanctions for abuse of the bankruptcy process, the Bankruptcy Code provides a variety of remedies. See, e.g., 11 U.S.C. § 105 (a) (2012) (authority to prevent abuse of process);[2] 11 U.S.C. § 303 (i) (2) (2012) (bad faith filing of involuntary petitions);[3] 11 U.S.C. § 930 (a) (2) (2012) (dismissal for unreasonable delay);[4] see also Fed. R. Bankr. P. 9011 (b) and (c) (sanctions for frivolous and harassing filings).[5] The question before this court is whether the Bankruptcy Code preempts vexatious litigation and CUTPA actions brought in state court that provide for penalties and sanctions, as well as damages for abuse of process.

[2] Section 105 (a) of title 11 of the 2012 edition of the United States Code provides: "The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process."

[3] Section 303 (i) of title 11 of the 2012 edition of the United States Code provides in relevant part: "If the court dismisses a petition under this section other than on consent of all petitioners and the debtor . . . the court may grant judgment . . . (2) against any petitioner that filed the petition in bad faith for . . . (A) . . . any damages proximately caused by such filing; or (B) punitive damages."

[4] Section 930 (a) of title 11 of the 2012 edition of the United States Code provides in relevant part: "After notice and a hearing, the court may dismiss a case under this chapter for cause, including . . . (2) unreasonable delay by the debtor that is prejudicial to the creditors . . . ."

[5] Rule 9011 of the Federal Rules of Bankruptcy Procedure provides in relevant part: "(b) By presenting to the court (whether by signing, filing, submitting, or later advocating) a petition, pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation . . . . (c) If, after notice and a reasonable opportunity to respond, the court determines that subdivision (b) has been violated, the court may, subject to the conditions stated below, impose an appropriate sanction upon the attorneys, law firms, or parties that have violated subdivision (b) or are responsible for the violation. . . ."

Metcalf *v.* Fitzgerald

This court has explained that there are three types of preemption: (1) express preemption, whereby Congress has through clear statutory language manifested its intent to preempt state law; (2) implied preemption, whereby Congress has legislated so comprehensively that federal law occupies an entire field of regulation and leaves no room for state law (occupy the field preemption); and (3) conflict preemption, whereby state law conflicts with federal law such that it is impossible for a party to comply with both or the local law is an obstacle to the achievement of federal objectives. See, e.g., *Sarrazin* v. *Coastal, Inc.*, 311 Conn. 581, 592–93, 89 A.3d 841 (2014); see also *English* v. *General Electric Co.*, 496 U.S. 72, 78–79, 110 S. Ct. 2270, 110 L. Ed. 2d 65 (1990). The plaintiff contends that the Bankruptcy Code does not preclude his state court claims under express, implied, or conflict preemption. He further argues that this court should overrule the Appellate Court's holding in *Lewis* that the Bankruptcy Code preempts these claims because the Appellate Court failed to properly address the three types of preemption. Had it done so, according to the plaintiff, the court would have concluded that federal bankruptcy law does not preempt the state law claims at issue.

Before addressing the three types of preemption in turn, it is important to note that the question of preemption turns on Congress' intent. We therefore "begin as we do in any exercise of statutory [construction] with the text of the provision in question, and move on, as need be, to the structure and purpose of the [federal law] in which it occurs." (Internal quotation marks omitted.) *Air Transport Assn. of America, Inc.* v. *Cuomo*, 520 F.3d 218, 221 (2d Cir. 2008).

I

Regarding express preemption, the plaintiff argues that the Bankruptcy Code does not contain an express

Metcalf *v.* Fitzgerald

provision preempting the causes of action brought in this case. We agree. "Express preemption occurs when 'Congress . . . withdraw[s] specified powers from the [s]tates by enacting a statute containing an express preemption provision.' " *Trikona Advisers Ltd.* v. *Chugh*, 846 F.3d 22, 35 (2d Cir. 2017); accord *Arizona* v. *United States*, supra, 567 U.S. 399. An express preemption provision "expressly directs that state law be ousted to some degree from a certain field." *Assn. of International Automobile Manufacturers, Inc.* v. *Abrams*, 84 F.3d 602, 607 (2d Cir. 1996). We find no provision of the Bankruptcy Code that explicitly precludes a state law CUTPA or vexatious litigation claim.[6]

This conclusion is not at odds with the conclusion the Appellate Court reached in *Lewis*.[7] The court in *Lewis* did not evaluate express preemption because the parties did not raise the issue. The defendant in *Lewis* argued that bankruptcy law preempted vexatious litigation and CUTPA claims under the theory of implied

---

[6] As an example of express preemption, the Medical Device Amendments of 1976, 21 U.S.C. § 360c et seq. (2012), provides in relevant part that, "[e]xcept as provided in subsection (b) of this section, no State or political subdivision of a State may establish or continue in effect with respect to a device intended for human use any requirement—(1) which is different from, or in addition to, any requirement applicable under this chapter to the device, and (2) which relates to the safety or effectiveness of the device or to any other matter included in a requirement applicable to the device under this chapter." 21 U.S.C. § 360k (a) (2012); see also *Mullin* v. *Guidant Corp.*, 114 Conn. App. 279, 285, 970 A.2d 733, cert. denied, 292 Conn. 921, 974 A.2d 722 (2009).

[7] Having determined that Congress impliedly preempted the state law claims by occupying the field, the court in *Lewis* did not need to analyze express preemption. See *Resolution Trust Corp.* v. *Diamond*, 18 F.3d 111, 125 (2d Cir.) (not addressing conflict preemption after holding that express preemption applied), vacated on other grounds sub nom. *Pattullo* v. *Resolution Trust Corp.*, 513 U.S. 801, 115 S. Ct. 43, 44, 130 L. Ed. 2d 5 (1994); *Depot, Inc.* v. *Caring for Montanans, Inc.*, Docket No. 16-74-M-DLC, 2017 WL 3687339, *5 (D. Mont. February 14, 2017) (not reaching issue of conflict preemption because plaintiffs' claims were expressly preempted). In the present case, we analyze all three types of preemption to add clarity and because the parties addressed each of them on appeal in this court.

Metcalf *v.* Fitzgerald

preemption (occupy the field). See *Lewis* v. *Chelsea G.C.A. Realty Partnership, L.P.*, supra, 86 Conn. App. 600. The court, therefore, did not reach the issue of express preemption.[8] "It is well settled that [o]ur case law and rules of practice generally limit [an appellate] court's review to issues that are distinctly raised at trial." *Southport Congregational Church-United Church of Christ* v. *Hadley*, 320 Conn. 103, 119 n.21, 128 A.3d 478 (2016); see id. (declining to address risk of loss provision raised for first time in brief).

Express *preemption* is not the only method by which Congress can address the role that state law plays in bankruptcy—it can affirmatively utilize state law and has done so. For example, § 522 of the Bankruptcy Code expressly permits debtors to choose either the bankruptcy property exemption scheme under federal law or the nonbankruptcy property exemption schemes available under state law. See 11 U.S.C. § 522 (b) (2012); see also *In re Pruitt*, 401 B.R. 546, 554 (Bankr. D. Conn. 2009). The plaintiff interprets Congress' utilization of state law as evidence that Congress "clearly intended for the bankruptcy courts to abstain from hearing certain matters involving state law and interests." We agree that when Congress affirmatively permits the operation of state law, state law can play a role. However, the operation of state law is conditional upon Congress' inclusion of state law. "State [l]aw has a role to play in bankruptcy only if Congress affirmatively permits

_____

[8] Neither the parties nor the trial court in *Lewis* performed a separate analysis of the three types of preemption. The defendant in *Lewis* argued generally, in its motion for summary judgment, that bankruptcy law preempted state law claims. The trial court granted the defendant's motion for summary judgment, stating that "[the] court is preempted by federal law from acting on a claim intended to sanction a party for its participation in a bankruptcy proceeding." *Lewis* v. *Chelsea G.C.A. Realty Partnership, L.P.*, Superior Court, judicial district of Waterbury, Docket No. X06-CV-96-0154801-S (January 22, 2003) (34 Conn. L. Rptr. 5, 7), rev'd, 86 Conn. App. 596, 862 A.2d 368 (2004), cert. denied, 273 Conn. 909, 870 A.2d 1079 (2005).

Metcalf *v.* Fitzgerald

it.'' *In re Pruitt*, supra, 554. Here, Congress did not affirmatively permit state law actions for abuse of the bankruptcy process, and, consequently, we conclude that the plaintiff's argument fails.

II

Second, the plaintiff argues that Congress did not intend to occupy the field of sanctions and remedies for abuse of the bankruptcy process. The plaintiff states that, by enacting the Bankruptcy Code, Congress intended only to provide a uniform and orderly administration of bankruptcy estates and payments to creditors. As to his claims for vexatious litigation, specifically, he contends that permitting such state law claims would not affect the equitable distribution of a debtor's assets, and, therefore, they are not preempted. We disagree.

To determine whether Congress has occupied a field, we look to the overriding purpose of bankruptcy law to infer Congress' intent. ''[A]bsent an explicit statement that Congress intends to preempt state law, courts should infer such intent where Congress has legislated comprehensively to occupy an entire field of regulation, leaving no room for the [s]tates to supplement federal law . . . .'' (Internal quotation marks omitted.) *Barbieri* v. *United Technologies Corp.*, 255 Conn. 708, 717, 771 A.2d 915 (2001). ''[O]ften, an [a]ct of Congress may touch a field of law in which the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject.'' *Eastern Equipment & Services Corp.* v. *Factory Point National Bank*, supra, 236 F.3d 120.

We conclude that the Bankruptcy Code impliedly preempts the plaintiff's state law CUTPA and vexatious litigation claims for two main reasons: (1) Congress legislated so comprehensively as to occupy the entire field of penalties and sanctions for abuse of the bankruptcy process, leaving no room for state law to supple-

Metcalf *v.* Fitzgerald

ment; and (2) the federal interest in uniformity is so dominant that we assume it precludes enforcement of state laws that threaten the uniformity and finality of the bankruptcy process for debtors and creditors alike.

A

We agree with the defendants that Congress has occupied the field of penalties and sanctions for abuse of the bankruptcy process, thereby implicitly preempting state law CUTPA and vexatious litigation claims. Our conclusion is consistent with the majority of federal as well as state courts that have analyzed whether the Bankruptcy Code occupies the field of penalties and sanctions. These courts have concluded that, because Congress has enacted such a comprehensive statutory scheme, inclusive of provisions for sanctions and remedies for abuse of the bankruptcy process, Congress has implicitly occupied the field, leaving no room for state law. See id., 121 (concluding that preemption precludes state law damages claims for violating automatic stay provision of Bankruptcy Code because Congress created lengthy, complex and detailed Bankruptcy Code to achieve uniformity); *MSR Exploration, Ltd.* v. *Meridian Oil, Inc.*, 74 F.3d 910, 914 (9th Cir. 1996) (precluding state law claim for malicious prosecution because "the adjustment of rights and duties within the bankruptcy process itself is uniquely and exclusively federal"); *Astor Holdings, Inc.* v. *Roski*, 325 F. Supp. 2d 251, 262 (S.D.N.Y. 2003) (barring state law claims for filing papers in bankruptcy proceeding in bad faith or for improper purpose because Bankruptcy Code contains remedies for misuse of process, and "thus such misuse is governed exclusively by that Code"); *Glannon* v. *Garrett & Associates, Inc.*, 261 B.R. 259, 263 (D. Kan. 2001) ("the Bankruptcy Code permits no state law remedies for abuse of the bankruptcy provisions"); *Raymark Industries, Inc.* v. *Baron*, Docket No. CIV 96-7625, 1997 WL 359333, *10 (E.D. Pa. June 23, 1997) (justifying pre-

Metcalf *v.* Fitzgerald

emption on ground that Congress expressed intent that bankruptcy matters be handled in federal forum by placing bankruptcy jurisdiction exclusively in district courts); *Koffman* v. *Osteoimplant Technology, Inc.*, 182 B.R. 115, 125 (D. Md. 1995) (holding that state law tort actions are preempted by Bankruptcy Code); *Idell* v. *Goodman*, 224 Cal. App. 3d 262, 271, 273 Cal. Rptr. 605 (1990) (holding that malicious prosecution action was preempted by federal law because "[t]he existence of federal sanctions for the filing of frivolous and malicious bankruptcy pleadings must be read as an implicit rejection of state court remedies"); *Smith* v. *Mitchell Construction Co.*, 225 Ga. App. 383, 386, 481 S.E.2d 558 (1997) (" 'state tort suits are preempted by the federal Bankruptcy Code' "), cert. denied, Docket No. 597C1344, 1997 Ga. LEXIS 858 (Ga. October 3, 1997); *Sarno* v. *Thermen*, 239 Ill. App. 3d 1034, 1047, 608 N.E.2d 11 (1992) (precluding state law conspiracy claim arising out of involuntary bankruptcy proceeding); *Longnecker* v. *Deutsche Bank National Trust Co.*, Docket No. 12-2304, 2013 WL 6700312, *4 (Iowa App. December 18, 2013) ("we conclude the federal bankruptcy code preempts Iowa tort claims premised on litigants' conduct in bankruptcy court"); *Mason* v. *Smith*, 140 N.H. 696, 701, 672 A.2d 705 (1996) (holding that plaintiff's state law tort claims based on allegedly wrongful filing of involuntary bankruptcy petition were impliedly preempted by Bankruptcy Code); *Stone Crushed Partnership* v. *Kassab Archbold Jackson & O'Brien*, 589 Pa. 296, 314, 908 A.2d 875 (2006) (concluding that sanctions in Bankruptcy Code provide inference that Congress intended to preempt state law remedies for frivolous claims in field of bankruptcy).

For example, in *Eastern Equipment & Services Corp.*, the plaintiff-debtor brought state law claims in the United States District Court alleging that, during the bankruptcy proceeding, creditors wilfully violated

Metcalf *v.* Fitzgerald

the automatic stay provision of the Bankruptcy Code by pursuing foreclosure actions in state court. *Eastern Equipment & Services Corp.* v. *Factory Point National Bank*, supra, 236 F.3d 119. The District Court granted the creditors' motion for judgment on the pleadings, concluding that the Bankruptcy Code preempted the state law claims, which should have been brought in the Bankruptcy Court. Id. On appeal, the United States Court of Appeals for the Second Circuit explained that a conclusion of preemption was compelled by (1) Congress' establishment of bankruptcy jurisdiction exclusively in the district courts under 28 U.S.C. § 1334 (a), (2) Congress' creation of a lengthy, complex and detailed Bankruptcy Code to achieve uniformity, (3) the constitution's grant to Congress of exclusive power over bankruptcy law, and (4) the Bankruptcy Code's provision of several remedies designed to deter the misuse of the bankruptcy process. Id., 121.

In a case that is directly on point with the present case, the United States Court of Appeals for the Ninth Circuit in *MSR Exploration, Ltd.*, addressed the question of whether federal law preempts state law malicious prosecution actions for events that had occurred in connection with Bankruptcy Court proceedings. *MSR Exploration, Ltd.* v. *Meridian Oil, Inc.*, supra, 74 F.3d 912. In *MSR Exploration, Ltd.*, the plaintiff debtor filed a chapter 11 bankruptcy proceeding. Id. In response, the defendant creditors filed claims against the debtor, to which the debtor objected. Id. The Bankruptcy Court entered an order disallowing the creditors' claims. The debtor did not pursue abuse of process sanctions or penalties in the Bankruptcy Court. Id. Instead, the debtor brought a state law malicious prosecution action in the United States District Court. Id.

The Ninth Circuit concluded that the Bankruptcy Code preempted the state law action for two main reasons. Id., 913. "First, Congress has expressed its intent

Metcalf *v.* Fitzgerald

that bankruptcy matters be handled in a federal forum by placing bankruptcy jurisdiction exclusively in the district courts . . . .'' Id. Second, the complex, detailed, and comprehensive Bankruptcy Code demonstrates Congress' intent to provide uniform and centralized adjudication of all of the rights and duties of debtors and creditors alike. Id., 914. ''It is very unlikely that Congress intended to permit the superimposition of state remedies on the many activities that might be undertaken in the management of the bankruptcy process. . . . [T]he highly complex laws needed to constitute the bankruptcy courts and regulate the rights of debtors and creditors also underscore the need to jealously guard the bankruptcy process from even slight incursions and disruptions brought about by state malicious prosecution actions.'' (Citations omitted.) Id. Accordingly, the Ninth Circuit concluded that the malicious prosecution action should have been brought in the Bankruptcy Court and upheld the District Court's determination that it lacked subject matter jurisdiction over the action. Id., 916.

We agree with the holdings of the majority of courts that have analyzed the issue and concluded that the Bankruptcy Code occupies the field of penalties and sanctions for abuse of the bankruptcy process. The plaintiff, however, disputes our conclusion and argues that a closer analysis of the Bankruptcy Code provisions that permit penalties and sanctions reveals that Congress did not intend to preempt his state law claims. Performing the analysis the plaintiff advocates for only further supports our conclusion that Congress occupied the field of penalties and sanctions.

We first examine 11 U.S.C. § 105,[9] which grants bankruptcy courts broad equitable powers to ''implement

_____

[9] Section 105 (a) of title 11 of the 2012 edition of the United States Code provides: ''The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall

Metcalf *v.* Fitzgerald

the provisions of Title 11 and to prevent an abuse of the bankruptcy process.'' *In re Volpert*, 110 F.3d 494, 500 (7th Cir. 1997), citing *In re Rainbow Magazine, Inc.*, 77 F.3d 278, 284 (9th Cir. 1996), and *In re Courtesy Inns, Ltd., Inc.*, 40 F.3d 1084, 1089 (10th Cir. 1994). The grant of equitable powers under § 105 broadly authorizes bankruptcy courts to issue *any* process, order, or judgment necessary to prevent abuse of the bankruptcy process. Congress did not limit or carve out from this broad grant a vexatious litigation exception for the states to legislate within. In practice, bankruptcy courts have sanctioned parties for vexatious litigation under that very provision. In *In re Volpert*, supra, 497, for example, the United States Court of Appeals for the Seventh Circuit upheld a Bankruptcy Court's imposition of a $1000 sanction against an attorney who had ''abuse[d] the judicial process.'' Id., 501. *In re Volpert* illustrates that bankruptcy courts have the authority, and in practice use that authority under § 105, to achieve a purpose similar to that of a state law remedy. *In re Volpert* supports our conclusion that Congress intended to occupy the field of penalties and sanctions for abuse of the bankruptcy process and left no room for state law to operate. Additionally, we are reassured by the fact that the Bankruptcy Code provides remedies for the kind of abuse of process of which the plaintiff complains. The plaintiff is not left without a remedy, even after the bankruptcy proceeding concludes.[10]

The plaintiff argues that, because a cause of action for vexatious litigation under Connecticut law provides relief that is different from the sanctions contemplated

be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.''

[10] Bankruptcy policy provides for cases to be ''reopened on motion of the debtor . . . .'' Fed. R. Bankr. P. 5010. By opening the case, the Bankruptcy Court has discretion to ''administer assets [and] to accord relief to the debtor . . . .'' 11 U.S.C. § 350 (b) (2012).

Metcalf *v.* Fitzgerald

under 11 U.S.C. § 105, it falls outside the field that Congress intended to occupy. We agree that the penalties and damages available under a successful state law claim for vexatious litigation are potentially more extensive than those available under the Bankruptcy Code. In Connecticut, a plaintiff can recover double damages for an action brought without probable cause, and treble damages for an action brought with malicious intent to vex and trouble. General Statutes § 52-568. Similarly, CUTPA permits a plaintiff to recover actual and punitive damages. General Statutes § 42-110g (a).

In contrast, 11 U.S.C. § 105 grants bankruptcy courts the discretion to issue any judgment necessary to prevent abuse of the bankruptcy process. Although Congress' grant of such discretion is broad, the practical effects of it may be that bankruptcy courts impose sanctions less frequently, and for lesser dollar amounts, than if the bankruptcy provisions more closely mirrored the language of the Connecticut statutes. But this potential distinction in frequency and in kind does not warrant an inference that Congress did not contemplate penalties and sanctions. Rather, § 105 indicates that Congress indeed considered penalties and sanctions, and adopted a statutory scheme. "[I]t is for Congress and the federal courts, not the state courts, to decide what incentives and penalties are appropriate for use in connection with the bankruptcy process and when those incentives or penalties shall be utilized." *Gonzales* v. *Parks*, 830 F.2d 1033, 1036 (9th Cir. 1987).

Another provision furnishing bankruptcy courts with authority to issue penalties and sanctions is rule 9011 of the Federal Rules of Bankruptcy Procedure. See footnote 5 of this opinion. Under rule 9011 (b) and (c), a court may sanction parties who file documents in bad faith or for an "improper purpose, such as to harass or to cause unnecessary delay or . . . cost . . . ." Fed. R. Bankr. P. 9011 (b) (1). The plaintiff analogizes rule

Metcalf *v.* Fitzgerald

9011 to rule 11 of the Federal Rules of Civil Procedure[11] and argues that, on the basis of their similarity, rule 9011 does not preempt a state law vexatious litigation action. And it is true that the language of the two rules is nearly identical. The plaintiff correctly points out that the 1993 advisory committee notes to rule 11 provide that the rule "does not preclude a party from initiating an independent action for malicious prosecution or abuse of process." Fed. R. Civ. P. 11, advisory committee notes, 28 U.S.C. app., p. 783 (2012). Additionally, the 1983 advisory committee notes to rule 7001 of the Federal Rules of Bankruptcy Procedure, which pertains to adversary proceedings, provide that the bankruptcy rules "either incorporate or are adaptations of most of the Federal Rules of Civil Procedure." Fed. R. Bankr. P. 7001, advisory committee notes, 11 U.S.C. app., p. 723 (2012). The plaintiff therefore argues that, because the rules are similar, this court should conclude that rule 9011 incorporates the advisory committee notes from rule 11, permitting a party to bring an independent vexatious litigation or abuse of process action. We are unpersuaded.

Although courts often look to advisory committee notes for interpretive guidance; e.g., *In re Old Carco, LLC*, 406 B.R. 180, 209 n.40 (Bankr. S.D.N.Y. 2009); they do not constitute binding authority. *In re Bressler*, 600 B.R. 739, 744 (S.D.N.Y. 2019) (discussing advisory committee notes to rules 4004 and 4007 of the Federal Rules of Bankruptcy Procedure). Committee notes are a product of the rules advisory committee, not Congress.

---

[11] Rule 11 (b) of the Federal Rules of Civil Procedure provides in relevant part: "By presenting to the court a pleading, written motion, or other paper— whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances: (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation . . . ."

Metcalf *v.* Fitzgerald

*United States* v. *Vonn*, 535 U.S. 55, 64 n.6, 122 S. Ct. 1043, 152 L. Ed. 2d 90 (2002). And while advisory committee notes can be "a reliable source of insight into the meaning of a rule"; (internal quotation marks omitted) *Hall* v. *Hall*,      U.S.     , 138 S. Ct. 1118, 1130, 200 L. Ed. 2d 399 (2018); the insight here speaks to rule 11, not rule 9011. Rule 9011 is silent as to the application or inclusion of the advisory committee note. "An inference drawn from congressional silence certainly cannot be credited when it is contrary to all other textual and contextual evidence of congressional intent." *Burns* v. *United States*, 501 U.S. 129, 136, 111 S. Ct. 2182, 115 L. Ed. 2d 123 (1991). Here, in the context of the Bankruptcy Code, congressional intent is clear—the creation of "a comprehensive federal system of penalties and protections to govern the orderly conduct of debtors' affairs and creditors' rights." *Eastern Equipment & Services Corp.* v. *Factory Point National Bank*, supra, 236 F.3d 120; see 11 U.S.C. § 101 et seq. (2012). Given this clear intent, it would be contrary to textual and contextual evidence that Congress intended to permit independent abuse of process actions outside the bankruptcy process.

In view of the provisions that address penalties and sanctions for abuse of the bankruptcy process, namely, 11 U.S.C. § 105 and rule 9011, it is clear that Congress occupied the field by legislating comprehensively as to penalties and sanctions for abuse of that process. Accordingly, we conclude that Congress impliedly preempted state law CUTPA and vexatious litigation claims.

The Appellate Court in *Lewis* came to the same conclusion, and we agree with Judge DiPentima's cogent analysis in that case. The Appellate Court explained that "[t]he code contains remedies for the misuse of the [bankruptcy] process . . . ." (Internal quotation marks omitted.) *Lewis* v. *Chelsea G.C.A. Realty Partnership*,

Metcalf *v.* Fitzgerald

*L.P.*, supra, 86 Conn. App. 602. "Although it is true that the federal remedies provided for in the bankruptcy context do not offer the substantial damages available under Connecticut's vexatious litigation statute and CUTPA, that is an insufficient basis on which to preclude preemption." Id., 603–604. "The exclusivity of federal jurisdiction over bankruptcy proceedings, the complexity and comprehensiveness of Congress' regulation in the area of bankruptcy law and the existence of federal sanctions for the filing of frivolous and malicious pleadings in bankruptcy must be read as Congress' implicit rejection of alternative remedies . . . ." Id., 605.

B

In addition to concluding that Congress implicitly preempted state law actions by occupying the field of bankruptcy law, we conclude that, in that field of law, the federal interest is so dominant that federal law is assumed to preclude enforcement of state laws on the subject. E.g., *Eastern Equipment & Services Corp.* v. *Factory Point National Bank*, supra, 236 F.3d 120. Nothing less than the constitution of the United States persuades us that Congress' interest in uniformity in the bankruptcy process is so dominant as to preempt collateral attacks through state law vexatious litigation and CUTPA claims. The constitution grants Congress the authority to establish "uniform Laws on the subject of Bankruptcies throughout the United States . . . ." U.S. Const., art. I, § 8, cl. 4. As described by Justice Joseph Story, the reasons for conferring bankruptcy power upon the United States "result from the importance of preserving harmony, promoting justice, and securing equality of rights and remedies among the citizens of all the states. It is obvious, that if the power is exclusively vested in the states, each one will be at liberty to frame such a system of legislation upon the subject of bankruptcy and insolvency, as best suits its

Metcalf *v.* Fitzgerald

own local interests and pursuits. Under such circumstances no uniformity of system or operations can be expected. . . . There can be no other adequate remedy than giving a power to the general government to introduce and perpetuate a uniform system." 2 J. Story, Commentaries on the Constitution of the United States (2d Ed. 1851) § 1107.

We approach the question of uniformity within the bankruptcy process cognizant of the fact that state courts can be hesitant to conclude that federal law preempts state law claims. On this point, the United States Supreme Court has stated that federal regulation "should not be deemed preemptive of state regulatory power in the absence of persuasive reasons—either that the nature of the regulated matter permits no other conclusion, or that the Congress has unmistakably so ordained." *Florida Lime & Avocado Growers, Inc.* v. *Paul*, 373 U.S. 132, 142, 83 S. Ct. 1210, 10 L. Ed. 2d 248 (1968). Yet, against this backdrop, state courts have concluded, as we do, that permitting state law claims for abuse of the bankruptcy process threatens the uniformity of the bankruptcy system. See, e.g., *Smith* v. *Mitchell Construction Co.*, supra, 225 Ga. App. 386 ("[a]llowing state tort actions based on allegedly bad faith bankruptcy filings . . . would have the effect of permitting state law standards to modify the incentive structure of the Bankruptcy Code and its remedial scheme . . . threaten[ing] the uniformity of federal bankruptcy law"); *Mason* v. *Smith*, supra, 140 N.H. 700 ("[a]llowing plaintiffs to pursue alternative remedies in state courts for wrongful filings would frustrate the uniformity of bankruptcy law intended by Congress by allowing each [s]tate to establish its own definition of 'bad faith' with regard to the filing of involuntary petitions").

Our concerns with respect to the uniformity of bankruptcy law are twofold. First, state courts evaluating

Metcalf *v.* Fitzgerald

claims that involve abuse of the bankruptcy process would need to develop adjudication standards for matters such as probable cause, bad faith, and malicious prosecution, to name a few. Those standards may be different from, and at odds with, the standards that have developed in the bankruptcy courts. See *Sarno* v. *Thermen*, supra, 239 Ill. App. 3d 1044 (explaining that it would be inconsistent with Congress' intent for state courts to develop different, more liberal tradition of bad faith for malicious prosecution purposes than that developed in federal system). It is foreseeable that states might disagree over the extent of an available remedy for abuse of process and the standard to be met. ''State courts are not authorized to determine whether a person's claim for relief under a federal law, in a federal court, and within that court's exclusive jurisdiction, is an appropriate one. Such an exercise of authority would be inconsistent with and subvert the exclusive jurisdiction of the federal courts by allowing state courts to create their own standards as to when persons may properly seek relief in cases Congress has specifically precluded those courts from adjudicating.'' *Gonzales* v. *Parks*, supra, 830 F.2d 1035. Varying standards for recovery from state to state would serve to undermine the federal interest in uniformity.

Second, permitting state law actions would allow parties to collaterally attack the bankruptcy process, threatening the finality of the proceedings as well as the ability of the parties—debtors and creditors alike—to make a fresh start once the bankruptcy proceeding concludes. One of the overriding purposes of the Bankruptcy Code is to provide debtors with a fresh start. ''It is the purpose of the Bankrupt Act to convert the assets of the bankrupt into cash for distribution among creditors and then to relieve the honest debtor from the weight of oppressive indebtedness and permit him to start afresh free from the obligations and responsibili-

Metcalf *v.* Fitzgerald

ties consequent upon business misfortunes.'' *Williams* v. *United States Fidelity & Guaranty Co.*, 236 U.S. 549, 554–55, 35 S. Ct. 289, 59 L. Ed. 713 (1915); accord *In re Renshaw*, 222 F.3d 82, 86 (2d Cir. 2000).

Creditors benefit as well by having "a single forum where debts and priorities can be determined in an orderly manner, a forum where those debts can be collected in whole or (more likely) in part.'' *MSR Exploration, Ltd.* v. *Meridian Oil, Inc.*, supra, 74 F.3d 916. The potential threat of state court actions following on the heels of a bankruptcy proceeding may well interfere with the necessary actions that creditors take within the bankruptcy process. Id. "[T]he mere threat of state tort actions could prevent individuals from exercising their rights in bankruptcy, thereby disrupting the bankruptcy process.'' *Eastern Equipment & Services Corp.* v. *Factory Point National Bank*, supra, 236 F.3d 121, citing *MSR Exploration, Ltd.* v. *Meridian Oil, Inc.*, supra, 913–16. For example, the threat of a state law action could deter a creditor from filing an adversary proceeding in the Bankruptcy Court challenging the discharge of a debt. We face that exact circumstance in the present case. The threat is then compounded when the state law action provides for substantial damage awards, as is also the case at hand. See, e.g., *Idell* v. *Goodman*, supra, 224 Cal. App. 3d 269 ("[t]he additional risk that substantial damage awards in state courts would create a material disincentive to those seeking to use the bankruptcy laws only exacerbates the problem'' [internal quotation marks omitted]). Both of these uniformity concerns fortify our conclusion that the Bankruptcy Code impliedly preempts state law CUTPA and vexatious litigation claims. The Bankruptcy Code provides the forum, incentives, penalties, and sanctions that apply uniformly to debtors and creditors nationwide.

Metcalf *v.* Fitzgerald

In response, the plaintiff urges this court to adopt the minority approach for evaluating implied preemption articulated by the Supreme Court of Texas in *Graber* v. *Fuqua*, 279 S.W.3d 608 (Tex.), cert. denied, 558 U.S. 880, 130 S. Ct. 288, 175 L. Ed. 2d 136 (2009). In *Graber*, the court considered whether the Bankruptcy Code preempted a state law malicious prosecution claim that arose out of an adversary action in a bankruptcy proceeding. Id., 609–10. Similar to the facts of this case, in *Graber*, a law firm had initiated an adversary proceeding against a debtor who had filed a voluntary chapter 7 petition in the Bankruptcy Court. Id. The petition resulted in a criminal investigation, an indictment for bank fraud and tax fraud, and then ultimately a trial in state court in which a jury found the debtor not guilty on all charges. Id., 610. The debtor then sued the law firm in state court, alleging civil malicious prosecution. Id. The law firm argued that the court lacked subject matter jurisdiction because federal bankruptcy law preempted the state law claim. The trial court agreed and granted the motion to dismiss the action. Id. On appeal, the Texas Supreme Court held that Congress did not intend for the Bankruptcy Code to preempt a state law malicious prosecution claim. Id., 620.

The Texas Supreme Court in *Graber* approached the preemption issue by analyzing each provision in the Bankruptcy Code to determine whether Congress intended to occupy the field of sanctions and penalties. The court reasoned that where Congress "custom-built" certain provisions of the Bankruptcy Code—unique provisions without analogues in general federal litigation—those provisions are more likely to preempt state law causes of action because Congress "built" or created a unique remedial provision. Id., 612–13. Conversely, the court reasoned, where Congress imported provisions from existing federal law without any significant changes, preemption of state law causes of action is "improbable," and those provisions should incorporate common practices under those existing federal laws.

Metcalf *v.* Fitzgerald

Id., 613. The court concluded that 11 U.S.C. § 105 and rule 9011 do not preempt state law claims for malicious prosecution because they are imported from existing federal law and represent Congress' implicit acceptance of state law malicious prosecution claims.[12] Id. Although that is still a minority view, some courts, in light of *Graber*, similarly have held that the Bankruptcy Code does not preempt state law causes of action providing damages for abuse of the bankruptcy process. See, e.g., *U.S. Express Lines, Ltd.* v. *Higgins*, 281 F.3d 383, 393 (3d Cir. 2002) (holding that state law claim for malicious prosecution was not preempted); *R.L. LaRoche, Inc.* v. *Barnett Bank of South Florida, N.A.*, 661 So. 2d 855, 857 (Fla. App. 1995) (concluding that federal bankruptcy law did not preempt state law abuse of process and malicious prosecution claims).

We disagree with the minority approach to the preemption analysis. Notably, the court in *Graber* did not cite any case law as authority for categorizing provisions of federal law as either "custom-built" or imported when determining whether those provisions are more or less likely to preempt state law causes of action. Rather, the court effectively adopted its own "custom-built" method to analyze individual provisions of the Bankruptcy Code. By adopting this analysis, the court failed to consider the structure and purpose of the Bankruptcy Code and, consequently, failed to recognize that Congress legislated so comprehensively as to occupy the entire field of regulation. See, e.g., *Longnecker* v. *Deutsche Bank National Trust Co.*, supra, 2013 WL 6700312, *6 (rejecting *Graber* approach and determining that state court did not err in "ruling, consistently

---

[12] The Texas Supreme Court decided *Graber* by a five to four margin. The dissenters concluded, as we have and as the Appellate Court did in *Lewis*, that federal law occupied the field and that permitting state law actions for malicious prosecution would undermine the uniformity of bankruptcy law mandated by the United States constitution. See *Graber* v. *Fuqua*, supra, 279 S.W.3d 620–21 (Wainwright, J., dissenting).

Metcalf *v.* Fitzgerald

with the majority of state and federal courts, that it
lacked subject matter jurisdiction over claims alleging
abuse of bankruptcy proceedings''); *PNH, Inc.* v. *Alfa
Laval Flow, Inc.*, 130 Ohio St. 3d 278, 285, 958 N.E.2d
120 (2011) (rejecting *Graber* approach and concluding
that federal law preempts state law causes of action
for misconduct of litigants in bankruptcy proceedings),
cert. denied, 565 U.S. 1262, 132 S. Ct. 1764, 182 L. Ed.
2d 533 (2012).

Like the substantial majority of federal and state
courts that have concluded that the Bankruptcy Code
preempts state law claims for abuse of process, we
conclude that Congress clearly has "considered the
need to deter misuse of the process and has not merely
overlooked the creation of additional deterrents." *MSR
Exploration, Ltd.* v. *Meridian Oil, Inc.*, supra, 74 F.3d
915. As previously stated, Congress decides what penal-
ties are appropriate within the bankruptcy process, not
state courts. *Gonzales* v. *Parks*, supra, 830 F.2d 1036.
Accordingly, we interpret Congress' grant of exclusive
jurisdiction over bankruptcy petitions to the district
courts, and the federal interest in uniform laws on bank-
ruptcy, as occupying the field and implicitly rejecting
state law claims for abuse of process.

III

Finally, the plaintiff argues that there is little similar-
ity between the penalties, sanctions, and damages avail-
able under Connecticut law for his CUTPA and vexa-
tious litigation claims, and the sanctions for abuse of
process available under the Bankruptcy Code. The
plaintiff asks this court to conclude that, because the
remedies are different, there is no conflict, and, there-
fore, his claims are not preempted.[13] We agree with the

_____

[13] Courts addressing the issue of preemption that we are faced with in
the present case often combine the analysis for occupy the field preemption
and conflict preemption, both of which are types of implied preemption,
without significant distinction. See, e.g., *Eastern Equipment & Services
Corp.* v. *Factory Point National Bank*, supra, 236 F.3d 120–21; *MSR Explora-*

Metcalf *v.* Fitzgerald

plaintiff that state law actions are not in conflict with bankruptcy law because a party can comply with both state and federal law. However, we conclude that those actions are still preempted under a conflict preemption analysis because they are an obstacle to accomplishing Congress' purpose within the Bankruptcy Code.

"Conflict preemption exists when compliance with both state and federal law is impossible, and a subset of conflict preemption referred to as obstacle preemption applies when the state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress. . . . State law is in irreconcilable conflict with federal law, and hence preempted by federal law, when compliance with the state statute would frustrate the purposes of the federal scheme." (Internal quotation marks omitted.) *Sarrazin* v. *Coastal, Inc.*, supra, 311 Conn. 593, quoting *Sosnowy* v. *A. Perri Farms, Inc.*, 764 F. Supp. 2d 457, 464 (E.D.N.Y. 2011). Therefore, we must determine whether compliance with state and federal law would be impossible and then consider whether the plaintiff's vexatious litigation and CUTPA claims would be an obstacle to Congress' objectives.

We agree with the plaintiff that compliance with both the Bankruptcy Code and Connecticut law would not

*tion, Ltd.* v. *Meridian Oil, Inc.*, supra, 77 F.3d 913–15, *Lewis* v. *Chelsea G.C.A. Realty Partnership, L.P.*, supra, 86 Conn. App. 601–605. As a practical matter, it often will be the case that, when Congress has occupied the field, a state law cause of action likely will obstruct Congress' purpose, resulting in conflict preemption. We note that courts often have held that if one kind of preemption exists, the others need not be addressed. See, e.g., *Resolution Trust Corp.* v. *Diamond*, 18 F.3d 111, 125 (2d Cir.) (not addressing conflict preemption after holding that express preemption applied), vacated on other grounds sub nom. *Pattullo* v. *Resolution Trust Corp.*, 513 U.S. 801, 115 S. Ct. 43, 44, 130 L. Ed. 2d 5 (1994); *Depot, Inc.* v. *Caring for Montanans, Inc.*, Docket No. 16-74-M-DLC, 2017 WL 3687339, *5 (D. Mont. February 14, 2017) (not reaching issue of conflict preemption because plaintiffs' claims were expressly preempted). Because the plaintiff in the present case sets forth arguments unique to conflict preemption that warrant separate analysis, we have not combined our analysis of these two types of implied preemption.

Metcalf *v.* Fitzgerald

be impossible. "The test of whether both federal and state regulations may operate, or the state regulation must give way, is whether both regulations can be enforced without impairing the federal superintendence of the field, not whether they are aimed at similar or different objectives." *Florida Lime & Avocado Growers, Inc.* v. *Paul*, supra, 373 U.S. 142. Connecticut's vexatious litigation statute strives to deter parties from bringing claims without probable cause and with malicious intent. See General Statutes § 52-568. CUTPA prohibits unfair methods of competition and unfair or deceptive acts or practices in the conduct of trade or commerce. See General Statutes § 42-110b (a). To comply with Connecticut law, a party need only refrain from bringing claims without probable cause, and compete fairly and without deception. Obviously, no provision in the Bankruptcy Code mandates that a party bring claims without probable cause or compete unfairly or deceptively. Connecticut law can be enforced without impairing the federal superintendence. Therefore, the state statutes do not conflict with the Bankruptcy Code such that it would be impossible to comply with both.

However, our obstacle preemption analysis implicates many of the same factors that drove our implied (or occupy the field) preemption analysis and leads us to conclude that the plaintiff's state law abuse of process actions are preempted. Congress enacted the Bankruptcy Code inclusive of penalties and protections to govern the orderly conduct of debtors' affairs and creditors' rights. Permitting parties to bring abuse of process actions in state court hinders Congress' objective of uniformly defining the scope and availability of remedies for abuse of the bankruptcy process.

We can imagine a myriad of claims that would lend themselves to vexatious litigation actions, including debtors' petitions, creditors' claims, disputes over reorganization plans, and disputes over pending discharges, to name a few. If such claims were not preempted by federal law, redress for them would depend on the law

of the state in which the plaintiff brought the action. *MSR Exploration, Ltd.* v. *Meridian Oil, Inc.*, supra, 74 F.3d 914. "Permitting assertion of a host of state law causes of action to redress wrongs under the Bankruptcy Code would undermine the uniformity the Code endeavors to preserve and would [stand] as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." (Internal quotation marks omitted.) *Pertuso* v. *Ford Motor Credit Co.*, 233 F.3d 417, 426 (6th Cir. 2000). Accordingly, the plaintiff's state law CUTPA and vexatious litigation claims are in conflict with the Bankruptcy Code provisions regarding sanctions for abuse of process and, thus, are preempted. The trial court properly dismissed these claims for lack of subject matter jurisdiction.

The judgment is affirmed.

In this opinion the other justices concurred.

---